This Wunderlich Act review is before us on the usual cross-motions for summary judgment. Plaintiff was prime contractor on a project to construct two army barracks at Fort McClellan, Alabama, at a fixed price of $12,750,000. A dispute arose whether the specifications allowed plaintiff to install fiberglass ducts in areas above fire-resistant ceilings. After 75 percent of the ducts had been installed, defendant required that they be replaced for safety reasons with metal ducts or else metal liners and fire dampers at outlets. Plaintiff, after some debate, elected the latter, for which it now claims an equitable adjustment of $147,832. The decision of the Armed Services Board of Contract Appeals, 80-2 BCA ¶14,668 (1980), is mostly devoted to a lengthy and exhaustive analysis of the specifications, establishing to its satisfaction that plaintiff could and should have concluded that the fiberglass ducts as originally installed did not conform to the specifications, and plaintiff did not construe them reasonably in asserting that they did. Plaintiff does *915 not go over all this again, mercifully, and does not except to this part of the board’s analysis, so we may take it as given and go on from there. It follows that plaintiff is not arguing that the contract specifications allowed the fiberglass ducts it originally installed, or did not require the more costly alternatives it ultimately furnished. Rather, it relies on the fact, as it alleges, that in October and December 1976, defendant’s agents were informed what plaintiff was going to install, and interposed no objection. Not until April 1977 did defendant respond to what was happening, and by then the fiberglass ducts were stored on the sites, and largely installed.
As regards the alleged October 1976 notice, the board finds that defendant was informed that plaintiff would install fiberglass ducts, but not where. As they were prohibited only in some areas, such notice was not enough. As regards the alleged December 1976 notice, the board acknowledges that the inspector who attended the meeting relied on had notice of what plaintiff meant to do. But it says the inspector involved lacked authority to approve any deviation from the specifications, and any unreasonable interpretation of them, such as plaintiffs, necessarily was a deviation. We may view this analysis as a bit simplistic. If plaintiff had alerted the inspector to the ducts as a problem area, arguably it would have been his duty to report the situation to those who had authority and elicit a ruling he could pass on to the contractor. Then the contractor might have relied on hearing nothing further. The finding is only (finding 34) that he was told "exactly what we were going to use, fiberglass and where we weren’t.” The inspector is not required to be some kind of computer, with the right response stored and ready to deliver at the merest touch. Defendant is not bound by his silence as to information merely run past him. If plaintiff was not required to be aware that the proper use of fiberglass ducts was going to be a problem, neither was the inspector; if plaintiff was aware, equity required it to say more than it did.
Plaintiffs other contention is that the order to replace or fireproof the fiberglass ducts was a "cardinal change.” If plaintiff were right about the specifications, and if we were to hold that the ducts first installed were in compliance, *916 plaintiff would be entitled to a constructive change order, with an equitable adjustment to accompany. This would be a change within the scope of the contract, not a "cardinal change.” Instead of being "cardinal,” it would have amounted to not much over 1 percent of the contract price. But we have held that defendant’s demands were not change orders at all, and, if not change orders, they could not be "cardinal changes.”
Accordingly, plaintiffs motion for summary judgment is denied, defendant’s motion for summary judgment is granted, the board decision is affirmed, and the petition is dismissed.